Filed 8/1/25  P. v. Kemp CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C099377 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE003496) |
| v. | OPINION ON TRANSFER |
| JAMAL KEMP, | |
| Defendant and Appellant. | |

In 2020, defendant Jamal Kemp pleaded no contest to attempted murder and admitted using a firearm.  In 2022, he filed a petition for resentencing under what is now Penal Code section 1172.6.[1]  The trial court denied the petition, reasoning that Kemp was ineligible for relief because his plea occurred after the Legislature had eliminated liability for attempted murder under the natural and probable consequences doctrine.  In this court, the People conceded that the trial court's reasoning was erroneous but argued that

---

[1]  Undesignated statutory references are to the Penal Code.

1

the testimony at the preliminary hearing nevertheless established that Kemp is ineligible for resentencing as a matter of law. We disagreed with the People and reversed.

Our Supreme Court granted the People's petition for review and transferred the case back to this court with directions to reconsider our opinion in light of *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*). The parties have filed supplemental briefs, and the People concede that the trial court's order should be vacated and the matter remanded. Having reconsidered the matter in light of *Patton*, we agree that is the appropriate course of action.

BACKGROUND

I.

A first amended information charged Kemp with two counts of attempted murder, two counts of assault with a firearm, and one count each of negligent discharge of a firearm, possession of a firearm by a felon, criminal threats, and dissuading a witness. (§§ 664, 187, 245, subd. (a)(2), 246.3, 29800, subd. (a)(1), 422, 136.1, subd. (b)(2).) Each of these crimes was alleged to have occurred in 2019. The People also alleged that Kemp used a firearm in the attempted murders, among other enhancements. (§ 12022.53, subd. (b).)

At the preliminary hearing, T.D., the mother of Kemp's children, testified that someone broke a window in her apartment on the night of the shooting. She went outside to investigate with her cousin, J.B., and then heard about five shots fired. T.D. could not see who was shooting. She heard a woman scream, "Stop Jamal." T.D. saw Kemp and an unknown woman get out of the car that was the source of the gunfire. The gunfire struck J.B.

T.D. further testified that, on the night of the shooting, she did not know who fired the shots and she told officers that night that she did not know who had shot J.B. Later, T.D. told detectives that Kemp was the shooter. T.D. thought Kemp fired the shots because J.B. had told her it was him. T.D. also testified that, after the shooting, Kemp

2

told her that he hated her and wished she were dead. She testified that Kemp told her that he was aiming the bullets at her but missed because she had ducked.

Police detectives also testified at the preliminary hearing. The first located video footage of the night of the shooting from the apartment manager. One video showed a person going up the stairs with an object in hand; moments later, the person came running down the stairs. T.D. and J.B. ran after the person.

A second camera captured J.B. running next to a car. When J.B. started to run away, a person got out on the passenger side and fired several times at her with a handgun. The detective was unable to identify the shooter from the video.

The detective testified that, after the shooting, T.D. told him that Kemp was the shooter. Separately, the detective interpreted comments by J.B. to mean that Kemp was the person who shot her.

A second detective testified that he interviewed Kemp's girlfriend, D.B., about the shooting. D.B. told the detective that she and Kemp went to T.D.'s home, where D.B. broke a window and ran back to the car. D.B. said that she was in the driver's seat and Kemp was in the passenger seat. As they tried to drive out of the parking lot, two women chased them. D.B. stopped the car, and Kemp jumped out and shot at the women. D.B. also told the detective that one of the women chasing them was reaching into her waistband as if to pull out a gun when Kemp jumped out of the car and fired at her.

Kemp agreed to plead no contest to one count of attempted murder and one count of dissuading a witness; he also admitted that he used a firearm in the attempted murder. (§§ 664, 187, 136.1, subd. (b)(2), 12022.53, subd. (b).) In exchange, the parties stipulated to a sentence of 26 years in prison.

At the change-of-plea hearing on November 16, 2020, the prosecution recited a factual basis for Kemp's plea, stating: "[D]efendant committed a felony violation of Penal Code Section 664/187(a), in that he unlawfully and with malice aforethought attempted to murder [J.B.], a human being. [¶] In addition, in the commission of this

3

offense, he personally used a firearm, that being a handgun within the meaning of [section] 12022.53[, subdivision ](b). Namely with regard to the specifics of this offense, the defendant did jump out of a car, fired six rounds at [J.B.] as she was running away from him, and one of the rounds did hit her in the foot."

The trial court asked defense counsel, "[s]tipulate to a factual basis?" Defense counsel responded: "I will stipulate there's a factual basis, yes, Your Honor." The court accepted Kemp's plea.

At a hearing in December 2020, the trial court sentenced Kemp to 26 years in state prison. This court affirmed the judgment.

## II.

In April 2022, Kemp filed a petition for resentencing pursuant to section 1172.6, a provision the Legislature adopted through Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).[2] The petition was "a preprinted form declaration with checked boxes" stating Kemp's belief that his case satisfied each element required for relief. (*Patton*, *supra*, 17 Cal.5th at p. 563.) In a list of conclusory allegations, the petition alleged that a criminal complaint was filed against him that allowed the prosecution to proceed under a theory of natural and probable consequences; that he was convicted of attempted murder after a plea; and that he could not presently be convicted of attempted murder because of changes made to sections 188 and 189 effective January 1, 2019.

After a hearing, the trial court denied the petition. The court noted that Kemp had pleaded no contest to attempted murder after Senate Bill 1437 took effect. That meant "that the changes to sections 188 and 189, including the new limitations on attempted murder and elimination of the natural and probable consequences theory, immediately

---

[2] Senate Bill 1437 enacted section 1170.95, and Kemp filed his petition under that section. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10.) We cite to the current section 1172.6 throughout this opinion.

4

applied to [Kemp's] case." The court concluded that "section 1172.6 is intended to permit individuals convicted 'under the former law' [citation] to obtain the benefits of S[enate] B[ill] 1437," and Kemp had "already reaped those benefits." He was therefore ineligible for resentencing as a matter of law.

Kemp appealed.

## DISCUSSION

### I.

Effective January 1, 2019, Senate Bill 1437 narrowed the scope of the felony-murder rule and eliminated the natural and probable consequences doctrine as a basis for murder liability. (*People v. Curiel* (2023) 15 Cal.5th 433, 448-450.) The Legislature adopted the law "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Among other things, the enactment amended section 188 to require that a principal convicted of murder "act with malice aforethought." (Stats. 2018, ch. 1015, § 2, subd. (a)(3).) It further provided that malice "shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*) It also added a procedure, now codified in section 1172.6, to permit individuals convicted of murder under prior law to request that their conviction be vacated and to seek resentencing. (Stats. 2018, ch. 1015, § 4; *Curiel*, at pp. 449-450.)

In 2021, the Legislature adopted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) to expressly allow those convicted of attempted murder under the natural and probable consequences doctrine or manslaughter to seek resentencing under section 1172.6. (Stats. 2021, ch. 551, § 2, subd. (a); *People v. Coley* (2022) 77 Cal.App.5th 539, 544, 548.) The Legislature enacted the provision to "clarif[y] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the

same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The law took effect on January 1, 2022. (*Coley*, at p. 544.)

As amended (and as relevant here), section 1172.6 provides that a person convicted of attempted murder under the natural and probable consequences doctrine may file a petition to have his or her conviction vacated when: (1) the charges filed against the person allowed the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine; (2) the person was convicted of attempted murder after trial or accepted a guilty plea in lieu of a trial at which he or she could have been convicted of attempted murder; and (3) the person could not presently be convicted of attempted murder because of changes to section 188 made effective January 1, 2019. (§ 1172.6, subd. (a)(1)-(3).)

After briefing on the petition, the trial court must hold a hearing and determine whether the petitioner has made out a prima facie case for relief. (§ 1172.6, subd. (c).) If the petition and record "establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) If instead the petition shows a prima facie entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioning defendant is guilty of attempted murder under section 188 as amended. (*Ibid.*; § 1172.6, subds. (c), (d)(1) & (3).) If the prosecution fails to carry its burden, the challenged conviction and any accompanying allegations or enhancements must be vacated and the petitioner resentenced on any remaining charges. (§ 1172.6, subd. (d)(3).)

A trial court's inquiry into whether a petitioner has stated a prima facie case for relief is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) The court takes the petitioner's " ' "factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Ibid.*) Trial courts may examine the record of conviction to determine

6

whether a petitioning defendant has established a prima facie entitlement to relief.  (*Id.* at pp. 970-972.)  If the record contains facts refuting the allegations in the petition, the court may make a credibility determination adverse to the petitioner.  (*Id.* at p. 971.)  But a trial court may "not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id.* at p. 972.)  As our state high court has explained, the " 'prima facie bar was intentionally and correctly set very low.' "  (*Ibid.*)

We review de novo a trial court's decision to deny a section 1172.6 petition at the prima facie stage.  (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

## II.

Kemp argues that the trial court erred in concluding that his plea to attempted murder in November 2020, after the enactment of Senate Bill 1437, established his ineligibility for resentencing as a matter of law.  The People concede that Kemp's plea, on its own, does not preclude relief under section 1172.6.

As we did in our original opinion, we accept the People's concession because section 1172.6 did not expressly apply to attempted murder at the time Kemp pleaded no contest to that charge.  (*People v. Kemp* (Feb. 11, 2025, C099377) [nonpub. opn.].)  When Kemp changed his plea in November 2020, Senate Bill 1437 had eliminated murder liability based on the natural and probable consequences doctrine.  (See § 188, subd. (a)(3).)  But before the Legislature adopted Senate Bill 775, the Courts of Appeal were divided on whether Senate Bill 1437 had abrogated the natural and probable consequences doctrine as a valid basis for an attempted murder prosecution.  (See *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222.)  It was not until January 2022—more than a year after Kemp's no contest plea—that Senate Bill 775 became effective and the law expressly eliminated that possibility.  (Stats. 2021, ch. 551, §§ 1, subd. (a), 2; *People v. Coley*, *supra*, 77 Cal.App.5th at p. 544.)  It therefore would have been theoretically possible, at the time of Kemp's prosecution, for the People to proceed against him under a natural and probable consequences theory of attempted murder.

7

Accordingly, Kemp's plea to attempted murder after the effective date of Senate Bill 1437, but before Senate Bill 775's adoption, does not, standing alone, establish his ineligibility for resentencing as a matter of law.

In their original response to Kemp's appeal, the People argued that the trial court was nevertheless correct in denying Kemp's petition because the testimony at the preliminary hearing established as a matter of law that the prosecution could not have proceeded on a theory of attempted murder under the natural and probable consequences doctrine and that Kemp could still be convicted of attempted murder on a valid theory. (§ 1172.6, subd. (a)(1) & (3).) In our original opinion, we declined the People's invitation to rely on the preliminary hearing transcript to reject Kemp's petition. We noted that the transcript was not before the trial court when it considered Kemp's petition, observing that it was before us on appeal only because we had granted the People's motion to incorporate it into the record. (*People v. Kemp*, *supra*, C099377.)

Even taking the transcript into account, we concluded that relying on evidence adduced at the preliminary hearing to reject Kemp's petition would have required us to engage in judicial factfinding that was not permitted at the prima facie stage. (*People v. Kemp*, *supra*, C099377.) We recognized that Courts of Appeal had reached different conclusions on whether and to what extent a court could consider evidence elicited at a preliminary hearing when evaluating the sufficiency of a section 1172.6 petition. (*People v. Flores* (2022) 76 Cal.App.5th 974, 989, disapproved in *Patton*, *supra*, 17 Cal.5th 549; *People v. Williams* (2024) 103 Cal.App.5th 375, 389-394, disapproved in *Patton*, *supra*, 17 Cal.5th 549 [discussing cases].) And we noted that our state Supreme Court was poised to address the issue in *Patton*. Pending that decision, we concluded that the testimony adduced at the preliminary hearing could not defeat Kemp's petition at the prima facie stage. (*People v. Kemp*, *supra*, C099377.)

After we issued our opinion, our Supreme Court decided *Patton*, holding that a "petitioner who offers only conclusory allegations of entitlement to relief under

8

section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton*, *supra*, 17 Cal.5th at p. 557.) In that case, defendant Patton "submitted a preprinted form declaration with checked boxes indicating his belief that he met the statutory requirements for relief. In response, the People offered the preliminary hearing transcript," which, the trial court concluded, "disqualified Patton from resentencing because it reflected he was the sole and direct perpetrator of the shooting such that his conviction was not based on the natural and probable consequences theory." (*Id.* at p. 563.) Our state Supreme Court held that, in circumstances like those, "a court, in determining at the prima facie stage whether a petitioner was convicted under a now-invalid theory [may] rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations." (*Id.* at p. 564.) The *Patton* court remanded the matter to allow the defendant to plead any additional facts to support a prima facie case for relief. (*Id.* at pp. 569-570.)

In their supplemental brief in this case, the People maintain that the testimony adduced at the preliminary hearing conclusively refutes the allegations in Kemp's petition. They nevertheless concede that the trial court's order should be vacated and the matter remanded to allow the court to consider the preliminary hearing transcript and any additional facts that Kemp wishes to allege.

We agree that is the proper course. As we have noted, the preliminary hearing transcript was not before the trial court when it considered Kemp's petition, thus depriving Kemp of a meaningful opportunity to respond to the facts the People believe foreclose relief. (See *Patton*, *supra*, 17 Cal.5th at p. 568 [admonishing courts to implement section 1172.6 "so that petitioners have 'meaningful' opportunities to present their petitions"].) Further, *Patton* has now set forth the relevant standards that a trial court must apply in determining whether a petitioning defendant has made out a prima facie case for relief. Under *Patton*, the People may refute allegations in a checkbox

9

petition like that here with a record of conviction that demonstrates that the petitioner's conviction was under a still-valid theory (*id.* at pp. 564-566); and a petitioning defendant "confronting a record of conviction that demonstrates relief is unavailable [has] the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail" (*id.* at p. 567). These are matters that the parties should be permitted to address before the trial court in the first instance. We therefore vacate the trial court's order denying Kemp's section 1172.6 petition and remand for the trial court to address Kemp's petition under the guidance set forth in *Patton*, including by giving Kemp an opportunity to plead any additional facts that he believes support his petition. (*Patton*, at pp. 569-570 [remanding to allow defendant to plead additional facts]; *People v. Glass* (2025) 110 Cal.App.5th 922, 931 [same].)

DISPOSITION

The trial court's order denying Kemp's petition for resentencing is vacated, and the matter is remanded for further proceedings consistent with this opinion.

 

 

/s/
FEINBERG, J.

 

We concur:

 

/s/
HULL, Acting P. J.

 

/s/
MAURO, J.

10